**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:22-CR-14** |
| | : | |
| **v.** | : | **(Judge Neary)** |
| | : | |
| **SHAKEEM MURRAY,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Justice requires careful balancing of a defendant's right to prepare his defense with the needs of law enforcement to investigate and prosecute criminal offenses. The identity of criminal informants sits at a tipping point between those two demands. Defendant Shakeem Murray has made a motion to reveal the identity of the confidential informant in his criminal case, arguing that the information is crucial to his defense. While keeping informants' identities confidential is generally valuable to law enforcement, in this case, Shakeem Murray's right to present his defense at a fair trial necessitates revealing the identity of the confidential informant, and so, the court will grant his motion.

## I.    Factual Background and Procedural History

Shakeem Murray was indicted on January 12, 2022 on five counts relating to possession and distribution of cocaine, heroin, and fentanyl as well as possession of a firearm in connection with drug trafficking. (Doc. 1). The charges stemmed from a

criminal investigation by the York City Police Department and the York County Drug Task Force in March 2021. (Doc. 89 at 2; Doc. 86-2 at EFC 4). There, police used a confidential informant to allegedly make an undercover purchase of a controlled substance from Murray. (Doc. 89 at 2; Doc. 86-2 at EFC 4).

The government states on March 16, 2021, police set up a transaction for a quantity of heroine via phone through a confidential informant. (Doc. 89 at 7: Doc. 86-2 at EFC 4). Officer Zachary Pelton overheard that call. (Doc. 89 at 9). While keeping the informant under surveillance, police observed the informant conduct a hand-to-hand transaction, allegedly with Murray. (Doc. 89 at 8; Doc. 86-2 at EFC 4). A later search of the informant revealed suspected heroin. (Doc. 89 at 8). While the informant was always within sight of the police, no one else participated in the transaction or heard what was discussed. (Doc. 89 at 8; Doc. 86-2 at EFC 4). Police did not arrest anyone at the scene, but they did arrest Murray on March 18, 2021. (Doc. 89 at 2). The March 16 transaction formed the bases for Count 2 of the indictment, distribution of a controlled substance, heroin, in violation of Section 841 of Title 21 of the U.S. Code. (Doc. 89 at 6-7; Doc. 1).

Murray filed a motion to reveal the identity of the confidential informant (Doc. 85). The motion has been fully, if minimally, briefed, (Docs 86, 89), and is ripe for disposition. As the government has not yet determined whether the informant will be called as a witness, this memorandum will proceed on the assumption that the informant will not testify. (Doc. 89 at 10).

2

## II.    Discussion

The informer's privilege is the government's privilege to withhold the identity of people who provide information about illegal actions to law enforcement from disclosure. Roviaro v. United States, 353 U.S. 53, 59 (1957). The purpose of this privilege is to encourage such disclosures to law enforcement and protect informants from harm related to their cooperation. McCray v. Ill., 386 U.S. 300, 308 (1967). The scope of the privilege is not unlimited. "Where the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Roviaro, 353 U.S. at 60–61.

The Supreme Court has stated "no fixed rule with respect to disclosures is justifiable." Id. at 62. Instead, courts are instructed to balance the public interest in encouraging the flow of information against the individual's right to prepare his defense based on the particular circumstances of the case. Id. In cases where the informant played an "active and crucial role" in the events leading to the criminal charges, the balance tips towards disclosure. United States v. Jiles, 658 F.2d 194, 196–97 (3d Cir. 1981).

The first step in this balancing test requires determining why the defendant needs to know the identity of the informant. Id. at 197. The defendant bears the burden of showing necessity. United States v. Ramirez-Cervantes, No. CV 22-226, 2023 WL 8595928, at *5 (W.D. Pa. Dec. 12, 2023). A defendant can show that

3

disclosure is necessary if: (1) the possible testimony may be highly relevant; (2) the informant's identity may show entrapment; (3) there may be some doubt as to the defendant's identity; or (4) the informant was the sole participant in the criminal activity other than the accused. Jiles, 658 F.2d at 198–99. Mere speculation that the informant's testimony could be useful to the defense is insufficient to justify disclosure. United States v. Rivera, 524 F. App'x 821, 827 (3d Cir. 2013) (nonprecedential). At the second step, the court must balance the defendant's stated need against the government's interest in maintaining the confidentiality of its informant. Jiles, 658 F.2d at 198.

Regarding step one, Murray asserts, without further explanation, that the informant was the sole participant in the alleged heroin transaction on March 16, 2021. (Doc. 86 at 4). After reviewing the facts of the case, the court agrees. Because the informant was the only person who directly spoke and interacted with the seller during the transaction, the informant was the sole participant even though police officers observed the entire transaction from a distance. See United States v. McGeth, No. 05-440-16, 2008 WL 90439, at *3 (E.D. Pa. Jan. 9, 2008) (finding that the informant was the sole participant when a police officer observed the informant purchasing cocaine from a distance).

The government does not meaningfully dispute that the informant was the sole participant. Rather, it argues Murray has not articulated another need for the informant's identity, such as for mistaken identity or entrapment. (Doc. 89 at 6). The government's argument is at odds with the circuit court's holding in Jiles which

4

establishes that an informant being the only other participant in the criminal activity is sufficient—by itself—to constitute a circumstance potentially justifying disclosing the informant. Jiles, 658 F.2d at 198-99. Additionally, the government attempts to cast the confidential informant in this matter as a mere "eyewitness." (Doc. 89 at 9). Such a description is inapt. In this matter, the informant was not just a witness, the informant was the distributee of the heroin. This transforms the informant from an eyewitness to a crime to participant in it. And, as established, the informant being the only other participant in the criminal activity distinguishes it from the cases on which the government relies. Accordingly, the court will move on to address step two.

At step two, the government argues that disclosing this informant's identity could have a chilling effect on other cooperating informants. (Doc. 89 at 10). The government has not identified any specific harm to the informant in this case or any possibility that identification would undermine its ability to prosecute this or any other case. Therefore, this court finds that the balance of the interests tips towards disclosure of the informant's identity.

### III.   Conclusion

Because Murray has shown that the informant was the sole participant in the alleged criminal conduct, the defense needs to know the identity of the confidential informant to get a fair determination of the issues raised in Count 2 of

the indictment. The government's hypothetical concern that revealing this informant's identity could chill future potential informants from coming forward is insufficient to outweigh Murray's need to prepare his defense. Murray's motion (Doc. 85) to reveal the identity of the confidential informant will be granted, and an appropriate order shall issue.

_____
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:    April 27, 2026